# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| H&R BLOCK TAX SERVICES LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:18-00053-CV-RK ) |
| JUAN FRIAS, | ) ) |
| Defendant. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Now before the Court is Plaintiff's Motion for Preliminary Injunction (the "Motion") (doc. 3) and suggestions in support (doc. 4).[1] Defendant filed suggestions in opposition (doc. 20), the Court held a hearing on the Motion (doc. 25), Plaintiff filed supplemental suggestions in support (doc. 26), and Defendant filed supplement suggestions in opposition (doc. 28). After review of the Motion, all briefing and argument of counsel, evidence of record, and applicable law, the Motion is hereby **GRANTED IN PART AND DENIED IN PART.**

## I.  PRELIMINARY INJUNCTIVE RELIEF

When determining whether to issue preliminary injunctive relief, courts weigh the following factors: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (citing *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 113 (8th Cir. 1981)).  No single factor is determinative; rather, they must be "balanced to determine whether they tilt toward or away" from granting the injunction. *Noodles Dev., LP. v. Ninth Street Partners, LLP*, 507 F. Supp. 2d 1030, 1034 (E.D. Mo. Apr. 13, 2007).

### A.  Substantial Likelihood of Success

H&R Block asserts a claim for breach of contract arguing that Defendant, both personally and through his spouse, breached and continues to breach the noncompetition and nonsolicitation covenants (collectively, the "Covenants") of his Franchise Lease Agreements ("FLAs").

---

[1]  As addressed in the Court's Temporary Restraining Order (doc. 13), the Court has jurisdiction over this matter.

H&R Block has shown a substantial likelihood of success on the merits of portions of its breach of contract claim against Defendant. The evidence of record demonstrates that Defendant has violated and is actively violating the FLAs' reasonable noncompetition and nonsolicitation covenants by which he has agreed to be bound.

1. **The FLAs and Their Covenants Are Enforceable**

Under Missouri law, "[n]on-compete agreements are typically enforceable so long as they are reasonable." *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. banc 2006). The Missouri Supreme Court has found that a noncompetition agreement is valid and enforceable if it: (1) "is no more restrictive than is necessary to protect the legitimate interest of the employer"; and (2) can be "narrowly tailored geographically and temporally." *Id.*; *see also Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74 (Mo. banc 1985) ("Covenants against competition must serve a proper interest of the employer in protecting the good will of a business, and must be reasonably limited in time and space.").

Reasonable restrictions are enforceable to protect "the employer's trade secrets or customer contacts." *Healthcare Servs.*, 198 S.W.3d at 610; *see also Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 247 (Mo. Ct. App. 1993) ("[A] covenant restricting an employee's right to compete must be reasonably necessary to protect the employer's legitimate interests and reasonable as to time and geographic scope."). The post-termination Covenants in the FLAs protect interests that Missouri recognizes as legitimate and are protectable as a matter of law, including: H&R Block's investment in the parties' transactions; H&R Block's established brand, goodwill, and confidential business information; and H&R Block's interest in preventing Defendant from unfairly using such assets to compete with H&R Block, diverting away its clients, and obtaining an undue advantage for his competing business. *See, e.g.*, *Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 937 (8th Cir. 2002) ("The Missouri courts have frequently held that . . . substantial and individualized customer contacts are a protectable interest warranting injunctive relief enforcing a covenant not to compete."); *Kessler-Heasley Artificial Limb Co. v. Kenney*, 90 S.W.3d 181, 186 (Mo. Ct. App. 2002) ("Stock in customers, also referred to as customer contacts, are a legitimate protectable interest."). H&R Block also has a legitimate and protectable interest in protecting its client information and client relationships from use by a competitor. *See Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 617 (Mo. Ct. App. 1988) ("The employer has protectable interests in trade secrets and customer

contacts."); *see also Naegele v. Biomedical Sys. Corp.*, 272 S.W.3d 385, 389 (Mo. Ct. App. 2008) ("In Missouri, the courts have identified two protectable interests of employers: customer contacts and trade secrets.").

In this case, the Covenants are also appropriately narrow in both time and geographic reach. First, the noncompetition and nonsolicitation provisions are limited to two years after the termination of the FLAs, subject to tolling for periods of noncompliance. Furthermore, the geographic area of the noncompetition provision is limited to Defendant's former franchise territories and an area within twenty-five miles of those territories. *See, e.g.*, *H&R Block Tax Servs. LLC v. Clayton*, No. 4:16-cv-00185, 2016 WL 1247205, at *3 (W.D. Mo. Mar. 24, 2016) (Bough, J.) (upholding 2-year, 25-mile non-competition agreement in a franchise agreement); *H&R Block Enters. LLC v. Ascher*, No. 4:15-cv-00178, 2015 WL 12746197, at *2 (W.D. Mo. Apr. 3, 2015) (Bough, J.) (upholding three- or five-year, 50-mile non-competition agreement under an asset purchase agreement); *Kessler-Heasley*, 90 S.W.3d at 188 (upholding five-year limit within a 50-mile radius); *Watlow Elec. Mfg. Co. v. Wrob*, 899 S.W.2d 585, 587–88 (Mo. Ct. App. 1995) (upholding five-year time limit); *Champion Sports Ctr., Inc. v. Peters*, 763 S.W.2d 367, 368–70 (Mo. Ct. App. 1989) (enforcing a restrictive covenant barring the seller of a business from competing with it for eight years in three counties). The Covenants are also appropriate under Missouri law because they were agreed to as part of a business transaction. *See Orthotic & Prosthetic Lab, Inc. v. Pott*, 851 S.W.2d 633, 643 n.4 (Mo. Ct. App. 1993) (explaining that "Missouri courts have long recognized a distinction between covenants ancillary to a sale of a business and covenants merely ancillary to an employment contract, showing substantially greater liberality in enforcing the former").

The Covenants are valid under Missouri law and will be enforced against Defendant. They are reasonably tailored to protect H&R Block's legitimate interests and are reasonably tailored in time and geographic scope.

### 2. Defendant Breached the Covenants

The noncompetition and nonsolicitation Covenants run for two years following the termination of Defendant's FLAs (tolled for any periods of Defendant's noncompliance). The FLAs were terminated on September 23, 2017, and therefore run until *at least* September 23, 2019.

The evidence of record establishes that Defendant currently owns and operates a competing tax business named "Latino Tax Services" less than twenty-five miles from his former franchise territory in Meriden, Connecticut. Plaintiff's Exhibit 4 from the preliminary injunction hearing is Google Map directions showing the distance from Defendant's former Meriden office to his current Latino Tax Services office at 21.3 miles. It is clear from the record that the distance from the outer boundary of the Defendant's former franchise territory in Meriden, would be even shorter than the distance between the two offices. In response, Defendant claims (1) the distance should be measured from the office not the territory boundary; (2) "franchise territory" has not been clearly defined; and (3) the distance from office to office is more than 25.5 miles. Each of these arguments fails because: (1) the noncompetition covenant in the FLAs prohibits Defendant from engaging in a similar business "in or within 25 miles of the Franchise Territory;" (2) "Franchise Territory" is clearly defined in word and by map image in each FLA; and (3) although there was testimony from Defendant that the distance from office to office is greater than 25 miles, this is rebutted by admission that there are shorter driving routes, and is irrelevant considering the FLAs noncompetition covenant is measured from the Franchise Territory boundary, not from the former franchise office.

However, the Court finds there is not sufficient evidence presented to find that Defendant, his officers, agents, servants, employees, and attorneys, or any other persons who are in active concert with him are operating a competing tax preparation office under the name "USA Tax" within Defendant's former franchise territory in New Britain, Connecticut. Although H&R Block's witness Mr. Hubert testified that a couple of former clients told callers that they had appointments with Defendant at USA Tax in New Britain, H&R Block's own investigator testified that she tried to no avail to schedule a meeting with Defendant in that location. Furthermore, although the investigator testified that USA Tax was referred to as a "branch" of Defendant's West Haven business, the reference was done so by a person who was trying to get her business even after she had persisted and said no she wanted to speak with Defendant. Additionally, Defendant testified that he did not call or send letters to former clients, and Plaintiff's Exhibit 4 shows a Facebook exchange in which multiple users ask Defendant if he is in New Britain, and he responds he is in New Haven. Moreover, the business records for USA Tax LLC, Defendant's Exhibit 4, list Fatima Martinez as the only member of its LLC. Additionally, the Court specifically disagrees with H&R Block's argument that Defendant

admitted that his wife opened the USA Tax business after the termination of his franchise business to send clients to Defendant. Rather, the Court finds that the testimony presented during the hearing established that Defendant's wife moved into the location in which she currently works when Defendant was operating an H&R Block franchise, for the purpose of sending clients to him at his H&R Block Franchise. Therefore, the Court does not find, at this time, that Defendant owns, operates, or works for USA Tax or that he has officers, agents, servants, employees, and attorneys, or any other persons who are in active concert with him operating or working at USA Tax.[2] The Court will vacate the portion of its Temporary Restraining Order with respect to any prohibition of tax services provided at that location.

However, the Court does find that, as shown in Plaintiff's Exhibit 2, Defendant has solicited or diverted clients from H&R Block by recommending USA Tax in New Britain in response to a former client's request for recommendation. This is in violation of Defendant's FLAs.

Finally, H&R Block cites certain Facebook posts as evidence of Defendant's ongoing solicitation in violation of the nonsolicitation covenant. H&R Block argues that Defendant "is promoting [his Latino Tax Services] business in a publicly-available Facebook page, clearly with the intent of soliciting and influencing former clients to visit his new tax office." (Doc. 4 at 16.) In their supplement, H&R Block argues Defendant "conceded that the vast majority of his [Facebook] 'friends' who posted in response to his business marketing were, in fact, former franchise clients." (Doc. 26 at 5.) The Court notes that the Facebook post referenced shows "Comments" by 11 people and "Likes" by 54 people. Six of the people who commented were listed on H&R Block's former client list, and 5 were not listed on H&R Block's former client list. Defendant's initial opposition (doc. 20) does not address the Facebook post; however, in Defendant's supplement (doc. 28), he argues that "Plaintiff admitted that a sign stating Tax Preparation would be allowed and not be solicitous of Plaintiff's clients. Defendant's Facebook post is merely an electronic sign." The fact remains that neither party has briefed with legal authority whether a Facebook post advertising a new business is solicitation, and courts have had

---

[2] While it is clearly established that Defendant's wife and former employee are working at USA Tax, it has not, at this time, been established that Defendant has any control over their work there. The Court understands the FLAs define Defendant's wife and former employee as "Franchise Associates" and state that Franchise Associates are held to the same noncompetition and nonsolicitation covenants as Defendant. However, Defendant's wife and former employee did not sign the agreements and are not parties to this lawsuit. Therefore, the Court cannot restrain them for breaching the contract absent their acting under the control of Defendant. Fed. R. Civ. P. 65(d)(2).

5

different views on the issue of whether posting on social media is solicitation. *See Pre-Paid Legal Servs. v. Cahill*, 924 F. Supp. 2d 1281, 1284 (E.D. Okla. 2013) (collecting cases). The Court believes that this issue is important and declines to rule on the issue without the parties briefing it with legal authority. Thus, the Court will direct supplemental briefing on this limited issue.

As discussed above, Defendant has violated and is violating the Covenants in certain respects. As such, H&R Block is likely to succeed on the merits of those breach of contract claims against Defendant.

**B.     Irreparable Harm**

H&R Block has sufficiently shown that it may suffer irreparable harm in the event a preliminary injunction is not issued. Irreparable harm is established if monetary remedies cannot provide adequate compensation for improper conduct. *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010); *Minana v. Monroe*, 467 S.W.3d 901, 907 (Mo. Ct. App. 2015). Courts have also presumed irreparable injury from a breach of a covenant not to compete or solicit. *See, e.g.*, *H&R Block Tax Servs. LLC v. Haworth*, No. 4:15-cv-00211, 2015 WL 5601940, at *4 (W.D. Mo. Sept. 22, 2015) ("Irreparable harm also properly is presumed where, as here, there is evidence that a covenant not to compete is breached or confidential, proprietary information is being improperly used."); *Safety-Kleen*, 301 F.3d at 935. The loss of clients and business is also an irreparable injury. *See Associated Producers Co. v. City of Independence*, 648 F. Supp. 1255, 1258 (W.D. Mo. 1986); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975).

As an initial matter, here Defendant agreed in the FLAs that a breach of the Covenants would cause irreparable injury to H&R Block such that temporary and permanent injunctive relief would be appropriate. Furthermore, if the Court does not intervene immediately to enjoin Defendant's conduct, H&R Block will continue to sustain irreparable damage in the form of lost clients and goodwill. Defendant is competing against H&R Block for its clients, in close proximity to the location of Defendant's former franchise territories. And Defendant's activities are occurring during tax season and will impact H&R Block most severely during the next three months (between now and April 17, 2018) when most income tax returns for tax year 2017 will be filed. Without a preliminary injunction, H&R Block faces a strong possibility it will lose a substantial part of the clients of the former franchise due to Defendant's breaches and will be

inhibited from re-establishing its business in the formerly franchised areas. Plaintiff's witnesses Shawn Moore and John Hubert both testified that H&R Block would suffer irreparable harm. Mr. Moore testified generally that if a client is lost for one tax season, there is potential to lose that client for a long time, if not forever. He also testified that loss of clients results in the loss of referrals. Mr. Hubert testified to the impact that Defendant's former offices have faced this year. For example, as of February 8th, 2017, the 665 West Main Street office in New Britain prepared 1133 returns compared to 59 this year, and the Meriden office prepared 647 returns compared to 5 this year. Mr. Hubert then testified that once H&R Block loses a client, it is almost impossible, if not totally impossible, to get them back and they then lose word of mouth and referrals to them.

Based on the authority cited and the evidence presented, the irreparable harm factor also favors entry of a preliminary injunction.

### C. Balancing of Potential Harms

The balance of hardships likewise weighs in favor of granting a preliminary injunction. Both parties offered testimony regarding the harm they faced depending on the Court's issuance of an injunction. Without the issuance of an injunction, H&R Block will suffer from lost relationships with clients and injury to its business. On the other hand, Defendant may also be harmed from lost relationships clients and injury to his business. However, any harm to Defendant is self-inflicted and the restraints being placed on Defendant are no greater than those to which he already agreed. *See, e.g.*, *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011) (balance of harms weighed in plaintiff's favor because defendant's harm was "largely self-inflicted"). Having accepted significant financial and other benefits from his agreements with H&R Block, Defendant should not now be relieved of his own obligations. *See Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 846 (8th Cir. 2005) ("Rogers knowingly and voluntarily agreed to be restricted by the covenant, and any perceived harm to him by the enforcement of the agreement is outweighed by the harm foreseeable to Emerson."). Additionally, Defendant is still permitted to continue his occupation as a tax professional; Defendant just must do so in accordance with the terms of his FLAs.

### D. Public Interest

The public interest also favors granting a preliminary injunction. Missouri courts have specifically found the enforcement of restrictive covenants serves the public interest, and this

Court agrees. *See Schott v. Beussink*, 950 S.W.2d 621, 625 (Mo. Ct. App. 1997) ("Missouri courts recognize that public policy approves employment contracts containing restrictive covenants because the employer has a proprietary right in its stock of customers and their good will, and if the covenant is otherwise reasonable, the court will protect the asset against appropriation by an employee."). The public interest is also furthered by preserving the enforceability of contractual relationships. *See Walters v. M & I Marshall & Ilsley Bank*, No. 09-0506, 2009 WL 2069581, at *3 (W.D. Mo. July 14, 2009). As such, this final factor also weighs in favor of the requested relief.

## II. CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that H&R Block's Motion for Preliminary Injunction is **GRANTED IN PART AND DENIED IN PART AS FOLLOWS:**

The Court **VACATES** its prior temporary restraint of the USA Tax office in New Britain, Connecticut and **DENIES** to preliminarily enjoin tax preparation services at that office.

The Court **GRANTS** the following relief:

Defendant, his officers, agents, servants, employees, and attorneys, and all other persons who are in active concert with him, are preliminarily enjoined from directly or indirectly doing any of the following:

1. Violating the terms of the FLAs, attached as Exhibits 1 and 2 to the Verified Complaint filed in this action;

2. For a continuous, uninterrupted period of two years beginning September 23, 2017, (excluding any periods of Defendant's non-compliance and time spent enforcing his obligations) from:

   a. Soliciting by mail, telephone, electronically, via the Internet, in person, or by other means, any person for whom tax return preparation or other Authorized Services (as defined by the FLAs) were rendered at any time during the term of the FLAs by Defendant or his franchise businesses;

   b. Diverting from H&R Block or H&R Block franchisees, any person for whom tax return preparation or other Authorized Services (as defined by the FLAs) were rendered at any time during the term of the FLAs by Defendant or his franchise businesses; including preparing tax returns or providing other Authorized Services (as defined in the FLAs) for any person for whom tax return preparation or other Authorized Services (as defined by the

FLAs) were rendered at any time during the term of the FLAs by Defendant or his franchise businesses; and

        c.      Engaging in any business which offers any product or service the same as or similar to any Authorized Service (as defined by the FLAs), including without limitation tax preparation services, in or within 25 miles of the franchise **territories** set forth in the FLAs;

        3.      Operating tax preparation offices at 479 Campbell Avenue, West Haven, Connecticut 06516.

**IT IS FURTHER ORDERED** that, the parties supplement their briefing with legal authority regarding the limited issue of whether social media posts are solicitations. The supplemental briefing is limited to 5 pages. Plaintiff shall file its supplement on or before February 23, 2018, and Defendant shall file its supplement on or before March 2, 2018.

**IT IS FURTHER ORDERED** that, under the circumstances of this case, including the financial position of H&R Block and the fact that the terms of the injunction do not pose a material risk of any injury to Defendant, no security is necessary.

**IT IS FURTHER ORDERED** that this Order shall take effect immediately and, absent further Order of this Court, shall remain in effect until this matter is resolved.

**IT IS SO ORDERED.**

                              s/ Roseann A. Ketchmark  
                              ROSEANN A. KETCHMARK, JUDGE  
                              UNITED STATES DISTRICT COURT

DATED: February 16, 2018